# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

DAMIEN D. BROWN,

        Petitioner,    :    Case No. 3:14-cv-036

  - vs -                             District Judge Walter Herbert Rice
                                           Magistrate Judge Michael R. Merz

WARDEN, Warren Correctional Institution,

                                      :

        Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Damien Brown, is before the Court for initial review pursuant to Rule 4 of the Rules Governing § 2254 Cases which provides in pertinent part: "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."

Brown has left blank the spaces in the Petition which call for the crimes of conviction and the length of sentence, but the Second District Court of Appeals, which heard his direct appeal, notes that he was convicted of two counts of murder and two counts of felonious assault, each with a firearm specification, and having weapons under disability. After merger of some counts under Ohio Revised Code § 2941.25, he was sentenced to fifteen years to life for murder, three years actual incarceration on the firearm specification, and five years on the weapons charged, to be served consecutively. *State v. Brown*, 2012-Ohio-1848, ¶ 1, 2012 Ohio App. LEXIS 1625 (2nd Dist. Apr. 27, 2012).

1

Brown pleads two grounds for relief:

> **Ground One:**  Ineffectiveness of Trial Counsel
>
> **Supporting Facts:**  When the prosecutor engaged in misconduct without objection from trial counsel.
>
> **Ground Two:**  Ineffectiveness of Appellate Counsel
>
> **Supporting Facts:**  Appellate counsel on direct appeal and discretionary appeal failed to assign as errors the matters that violated Petitioner's federal constitutional rights to a fair trial and effective counsel under the Sixth and Fourteenth Amendments.

(Petition, Doc. No. 1, PageID 5, 7.)

The Magistrate Judge finds the Petition as thus pled does not state a claim upon which habeas corpus relief can be granted.  As to Ground One, Petitioner does not say what prosecutorial misconduct occurred but was not objected to.  Ground Two is even more opaque as it does not say what rights Brown is claiming were violated without an assignment of error being raised.  Rule 2(c)(2) of the Rules Governing § 2254 Cases requires that the petitioner "state the facts supporting each ground," but Brown has stated no facts at all.

His appellate counsel did raise a claim of prosecutorial misconduct on direct appeal as his First Assignment of Error.  The court of appeals decided that claim as follows:

> [*P12] Brown's first assignment of error states:
> COLLECTIVE COMMENTS BY THE PROSECUTOR DURING VOIR DIRE, TESTIMONY, AND CLOSING ARGUMENT REPRESENTED MISCONDUCT AND SERVED TO DENY APPELLANT DUE PROCESS.
>
> [*P13] Brown claims that the prosecutor engaged in misconduct by making "snide and improper comments," expressing her personal beliefs to the jury, questioning him in an "inappropriate and harassing" manner, and relying on facts not in evidence during closing argument.
>
> [*P14] In reviewing claims of prosecutorial misconduct, the test is whether the remarks were improper and, if so, whether those

comments prejudicially affected the substantial rights of the defendant. *State v. Jones*, 90 Ohio St.3d 403, 420, 2000 Ohio 187, 739 N.E.2d 300 (2000). "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct.940, 71 L.Ed.2d 78 (1982). Where it is clear beyond a reasonable doubt that the jury would have found the defendant guilty, even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. See *State v. Underwood*, 2d Dist. Montgomery No. 24186, 2011 Ohio 5418, ¶ 21. We review allegations of prosecutorial misconduct in the context of the entire trial. *State v. Stevenson*, 2d Dist. Greene No. 2007-CA-51, 2008 Ohio 2900, ¶ 42, citing *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

[*P15] There was no objection to the alleged instances of prosecutorial misconduct; therefore, Brown has waived all but plain error. *State v. Bryan*, 101 Ohio St.3d 272, 2004 Ohio 971, 804 N.E.2d 433, ¶ 175; *State v. Ballew*, 76 Ohio St.3d 244, 254, 1996 Ohio 81, 667 N.E.2d 369 (1996). The plain error rule is to be invoked only under exceptional circumstances in order to avoid a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 95, 372 N.E.2d 804 (1978). Plain error does not occur unless, but for the error, the outcome of the trial clearly would have been different. *Id.* at 97; Crim.R. 52(B).

*Voir dire*

[*P16] Brown's objection to the prosecutor's conduct during voir dire is reflected in the following passage:

PROSECUTOR: Let's talk about something else. Sympathy. The Defendant gets to stay in the courtroom throughout the entire trial. The victim doesn't get that opportunity. So, you're going to be looking at him every day. Okay? And you may even form an opinion about how he looks there. I don't know. But the point is, you're going to have to look at him every day.

Anybody here think that any sympathy whatsoever could creep into this trial? And, quite frankly, that's true even for the victim. There is no place for sympathy in this case, whether it's for the victim or the Defendant. Anybody have a problem with that?

[*P17] One prospective juror responded to this question. The prospective juror had previously disclosed that she had been abused by her "extremely violent" husband, but had stayed with

him for eight years because she thought she "could fix him." Although her response to the prosecutor at this particular point in voir dire was "indiscernible," the prosecutor asked if the juror's response was for the "same reason" that had been discussed earlier. We can glean no additional insight into this interaction from the record, and we note that this prospective juror was not seated. Based on the record before us, we have no basis to conclude that the prosecutor's questions about sympathy for Brown or about "hav[ing] to look at him" during the trial caused any prejudice to Brown.

*Comment on the victim's rights under the law*

**[\*P18]** Brown contends that the prosecutor acted improperly by commenting that the victim "gets as much protection under the law as any of you would." (Emphasis in brief.)

**[\*P19]** It will be helpful to our discussion to view this comment in context:

PROSECUTOR: [Prosecutor referred to previously addressed "abusive relationship and how you feel about * * * a woman in that situation."] * * * [I]s there anybody here collectively or individually who have [sic] a problem with the notion that all women are protected equally? All women are protected equally regardless of what you think they might bring on themselves by their own actions. If a woman chooses to stay with her abuser, for any number of reasons, or, quite frankly, reconcile with them, maybe they were put out but they reconciled, which I'm sure you're familiar with in that cycle of violence. * * * Are you going to hold that against her and say, you know, "You got what you deserved?["] PROSPECTIVE JURORS: Huh-uh. PROSECUTOR: Okay, And that's all we're looking for. She gets as much protection under the law as any of you would. Can we agree to that? Anybody think they have a problem with that? * * *

**[\*P20]** In our view, the prosecutor did not act improperly in asking the jurors whether they agreed that the victim was protected under the law, even if she returned to an abusive relationship. The reference to the victim's having as much protection "as any of you" arguably suggested to jurors that they place themselves in the position of the victim. However, such a "golden rule" comment is not per se prejudicial; rather the test is whether it prejudicially affected the substantial rights of the defendant. *State v. Ross*, 2d Dist. Montgomery No. 22958, 2010 Ohio 843, ¶ 126. We cannot say that it did. Moreover, Brown did not object to the question;

4

even if we were to assume, for the sake of argument, that the question were improper, there is certainly no basis to conclude that the question caused a "manifest miscarriage of justice" requiring reversal of the conviction for plain error. *Underwood*, 2d Dist. Montgomery No. 24186, 2011 Ohio 5418, ¶ 21.

*Manner of questioning the Defendant*

[\*P21] Brown also contends that the prosecutor harassed him during cross-examination by "continuously prefac[ing] her questions with 'You want the jury to believe...'" or a similar preface.

[\*P22] Prosecutors have wide latitude in cross-examining witnesses, subject to the trial court's discretion. *State v. Garfield*, 34 Ohio App.3d 300, 303, 578 N.E.2d 568 (11th Dist.1986).

[\*P23] A trial is an adversarial process, and the trial court did not abuse its discretion in allowing the prosecutor to express some degree of skepticism about Brown's version of events. Defense counsel did not object to the questions. Moreover, our review of the record indicates that the questions about which Brown complains highlighted inconsistencies in his account or were addressed to fairly minor issues, such as how pictures ended up on the floor. We discern no error, plain or otherwise, with respect to this aspect of the prosecutor's cross-examination of Brown.

*Reliance on facts not in evidence during closing*

[\*P24] Finally, Brown contends that the prosecutor argued facts not in evidence during closing argument. In particular, Brown objects to the following statement: "[Brown is] the only person who told you Marquell [Marquita's son] didn't see it. But you know what, Marquell saw enough. Maybe we will never be able to know how much Marquell saw. But he put it together. He put it together. And that's what makes it so reliable."

[\*P25] Marquell was not called by either side and did not testify at trial, but his 911 call was played, without objection, for the jury. In that call, he stated: "Damien Brown has shot my momma."

[\*P26] Both prosecutors and defense attorneys are given wide latitude during closing arguments to address what the evidence has shown and what reasonable inferences may be drawn from that evidence. *State v. Black*, 181 Ohio App.3d 821, 2009 Ohio 1629,

5

> 911 N.E.2d 309, ¶ 33 (2d Dist.), citing *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990).
>
> **[*P27]** Although no evidence was presented that Marquell witnessed the shooting, the prosecutor urged the jury to take Marquell's perception of what had happened into account. In other words, the prosecutor urged the jury to make an inference that Marquell knew what had happened in the apartment, without presenting direct evidence that Marquell had seen the shooting. The jury was undoubtedly aware of the uncertainty surrounding Marquell's account, and it was free to draw inferences from his statements to the 911 operator. Even in Brown's version, he was holding the gun when it fired, albeit accidentally. Moreover, there is little likelihood that the outcome of the trial would have been different absent the prosecutor's statements, particularly when those statements are considered in the context of all the State's evidence and the prosecutor's entire closing argument. *State v. Stephens*, 24 Ohio St. 2d 76, 82, 263 N.E.2d 773 (1970). No plain error occurred during closing argument that undermines our confidence in the jury's verdict.
>
> **[*P28]** Having found no instances of prosecutorial conduct that amounted to plain error, the first assignment of error is overruled.

*State v. Brown, supra,* ¶¶ 12-28.

As to those instances of asserted prosecutorial misconduct which were raised on direct appeal, the court of appeals did enforce the Ohio contemporaneous objection doctrine and only reviewed those asserted instances of misconduct for plain error. Brown has not told this Court of any other instances of alleged misconduct which were not objected to at trial and also not raised on appeal. Although the court of appeals applied plain error analysis, it gave no indication that Brown was in any way penalized by his lawyer's failure to object. That is, the court nowhere indicated it found error that would have resulted in a reversal but just was not bad enough to be plain error. In the absence of any misconduct which would have resulted in a reversal if there had been an objection, trial counsel cannot have been ineffective for failure to make an objection. *Strickland v. Washington,* 466 U.S. 668 (1984). Therefore the First Ground for Relief

6

is without merit and should be dismissed.

The Second Ground for Relief should also be dismissed.  In the first place, Brown has not said what assignments of error should have been raised by appellate counsel but were not.  For appellate counsel, as with trial counsel it cannot be ineffective assistance to fail to raise claims that would not have succeeded.  *Strickland, supra.* A habeas court cannot begin to tell what might have succeeded if the petitioner does not plead what it is he thinks appellate counsel should have raised.

Moreover, the claim of ineffective assistance of appellate counsel is procedurally defaulted.  Brown admits in his Petition that he has never raised this claim in the state courts (Petition, Doc. No. 1, PageID 7.)  Ohio offers a remedy for ineffective assistance of appellate counsel by way of any application under Ohio R. App. P. 26(B) for reopening the direct appeal.  Brown has, by his own admission, never filed such an application and the time for doing so under Rule 26(B) has expired, so he cannot now file such an application.

**Conclusion**

The Petition herein should be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous. February 5, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).